Our next case is Interactive Wearables v. Polar Electro Oy 2021-1491, Mr. DeFincenso. Good morning, Your Honors. The claims in this case passed both ALICE Step 1 and Step 2. Step 1 asks an important question. What are the claims as a whole directed to? And in particular in this case, Representative Claim 32. Can I clarify something on that? Because in your blue brief, in a footnote, you seem to concede that Claim 32 is representative. But then you repeatedly point to the wirelessly coupled limitation that's in other claims. So is it representative or is it not? Wirelessly is required by Claim 32, Your Honor. The wireless remote control, the last limitation. The one above it says wearing the content player is a wearable content player configured to be coupled by a wireless remote. The district court found otherwise, but that's directly a claim. Well, it's a wireless remote, but do you don't read that as differently than wirelessly coupled? I don't read that differently. It has to control. It has to communicate both ways. So I don't think that has any bearing on the issue. Okay. So you don't see any difference between the two? No. There was no claim construction on it, but if it's not wirelessly coupled, it can't be a wireless remote control. It can't control the device, and it requires it to control the device. Okay. Okay. So if we look at Claim 32, is this claim on its face directed to an abstract idea? Now you'll note right away, it's not a software claim. It's not a mechanism. Part of our case law says that in determining what a claim is directed to, look at the purported advance over the prior article, right? And here, the district court termed your specification, interpreted your claims in light of the specification to try to understand what these claims were in the purported advance of the prior, and really focused on that limitation about receiving content together with the content information associated with the content, right? And so I see you arguing. I think you're arguing something else. You're arguing, no, no, our claims, what they're directed to, is something else. And so there's something of a disconnect between your specification and your claims, right? That's not necessarily the case, because the district court pointed to one sentence in the summary of the invention, and it was the beginning, and that's where a broadcasting system was discussed, and that broadcasting system is what provides content and information about content. Is there some place else in your specification where it talks about the value or importance of having a remote control with a display where there's a consumer wearable device that it controls? Yeah. Can you give me a column and line number? I will, Your Honor. If we look at column seven, line 22 through 27, which is still in the summary of the invention, it describes an object of the present invention is to provide an apparatus and method for providing information in conjunction with media content. I'm sorry, where are you in that column? Column seven, 22 through 27. And then it says, which can display the information to a respective listener or viewer at or in conjunction with a remote control and or input device associated with a media playing device. And this specification was written in 2002. At that time, they recognized that they had an invention directed to the content player remote control. And importantly, we don't begin with the specification. Whether it's Alice, whether it's this court's precedence, we begin by looking at the claims. Now, this doesn't say the remote has a display, right? And it also doesn't say that the content player here could be a TV, right? It says which can display the information at or in conjunction with the remote control. If it's going to be displayed at a remote control, it has to have a display. And the display is further discussed. I thought that the display was at the content playing device. They both have displays. I meant in this, where is it pointing to in column seven? Can display the information to a respective listener at or in conjunction with a remote. So at. It can display that, and that's an object of the invention. I still don't see where this says that the content provider is wearable, nor does it say that the display is on the remote as opposed to the content provider. Do you have any other place in the specification? Well, in the specification itself, if we look at column 13, 1 through 19, in the detailed description of the invention, the media playing device 20, I'll just look at it, 13, 1 through 19, it says the media playing device 20 can also include a display device, well, the display device 20D can also be located on the remote control device. I don't see where it says display device. It says input device 20D. If you go towards line 19. I go down to line 19? Yeah, the display device 20D can also include, and that's part of the detailed description of the invention. That's where you're relying on where it says the display device can also be located on dashboard control display of a car radio? No, the display device 20D can also be located on the remote control device 20D. That's what the claim is directed to here. It's not directed to the broadcasting system at all. And frankly, you can't get to that abstract idea if you start with this claim. The district court started with what it believed to be the intent of the invention, but when there are multiple inventions described in the specification, like here, where you have a broadcasting system, and then later on in the background, it discusses the remote and the actual device that takes that information and uses it in a non-conventional manner, you can't then go to the specification and rewrite the claims. So what you're saying is that the key language in the claim itself is the where in language at the end? I think the key language in the claim is the entirety of the claim, but certainly the where in. At the time, we have to take ourselves back to 2002. Remote controls didn't have display devices at that time, and there's no evidence they did. Can I ask you something? I hear what you're saying. The thing I'm struggling with a little bit, there's a couple things. One is that your specification doesn't really tout that, so this is so great. The other thing, it might disclose different parts. The other thing is that you're right, we go back to 2002, and that idea is really different, but there's nothing other than blank boxes in the diagrams, and there's no specific detail on how that would work. Is that required in order to not be an abstract idea? Do you have to actually provide more than I'm going to have this component, that component, this component? They're going to be able to talk to one another, and it's going to be great. I think under American Axel, where it said the difference is when you're looking at the spec for enablement, and when you're looking at the claim and saying, is this described functionally, and it's almost like a means-posed function kind of way. Here, the remote is a physical structure. It has a display that displays that information. Now, if you're going to say, well, one would need more, well, that's not for me. You were the judge. All we need to know, I mean, me, you, everyone is going to want more. You're saying because it's a physical device, it satisfies what we want, but that ship has sailed. There's a lot of cases where physical devices have been determined, even cases that were pre-Bilski, where physical devices were determined to not be sufficient to be eligible. And certainly cases post-Bilski. What else do you have? At a certain point, there has to be a difference between being directed to a physical device or directed to an abstract idea and related to. And if we look at TLI, and we look at ChargePoint, and we look at Bilski and Alice, in all those cases, it was a series of steps or a method. And if you looked at the claim itself, the abstract idea jumped out at you. In none of those cases was there a single limitation at issue. This one, there's one limitation that is tangentially related to the abstract idea of providing information. It is the receiver that receives content along with information about content. But wearable receivers were not completely unconventional at the time. I'm putting aside the article that the judge probably shouldn't have looked at or cited, but you're not saying that it was because you had something on the wrist. No, not at all. In general, remote controls in 2002 didn't have displays, and they didn't receive information from a content player. Remote controls were one-way devices, generally, conventionally, in 2002. So it's all about the remote control? It's all about the remote control. Of course it is. That's the environment. Can I ask you something? I just want to make sure I understand. I think it's the content player that's receiving the content, and the remote control is maybe receiving information about the content. Do I have that right? Sort of. The content player receives both the content and the information about content that's expressly stated in the claims, and there's no dispute on that. Now, the information about content, the one that was received at the content player, that information about the content to be played is then displayed on the remote. That has to get it from the content player. It's two-way. That's what the invention's about. Where am I going to see that in your specification? I mean, I understand. Do you have any other place where that's touted or says just anything like... Well, it says the different manners in which they can communicate, and there was no issue on enablement or anything like that with respect to that part of it. We asked the court to focus on the remote. Yes, we did. And the complaint, if you look at it, paragraph 18, discusses the remote, and it says it's hard to prove a negative that something's not conventional. So here we're pointing to evidence saying, look, wristwatch-type remote controls or whatever, those didn't even exist. But how do you cite evidence that, well, nothing existed? That's not evidence. So we cited things that would make our allegations plausible, that they're not conventional, and that's all we had to do. The burden shifts. The wheel and remotes were known for controlling televisions and other instruments even in 2002. So why isn't Claim 32 directed to several old components, standard components, whereas clause deals with the exchange of information? Abstract idea. Because what is being exchanged, the remote control is receiving a particular type of information. That information is the information about the content. Now, that improves the technology. Previously, if I was listening to a radio and sitting on my couch, and in 2002, let's say I was fancy enough to have a remote control for the radio, it didn't have a display on it. If I wanted to know what that song was, as it says in the specification, I had to wait. Well, this invention says you no longer have to wait. It didn't make it faster. It didn't automate anything previously done. It said, now that technology has improved. Why? Because I'm going to put a display, a physical component on that device. That device is going to receive information from the radio about the song being played. I'm sorry. Is there anything in spec? I mean, I get that you mentioned a remote control with a display. In the spec. But is there anything there where you're touting the two-way remote control as an improvement over the prior? I don't believe it's touted. No, it's not in the spec. I'm certain. However, it is in the complaint. And this court has made clear that benefits are not limited to those benefits stated in the specification. And there is no reason to. This is not a typical thing used as a tool. A computer used as a tool. Is there a figure showing the remote control with the input device? The remote control with the display? No, there is not, Your Honor. Doesn't sound like the essence of the invention, then. The essence of the invention. If the essence of the invention is physical, and here it's physical. So we're looking, we're applying case law that deals with business methodologies. If it's physical, what do I do about that? This isn't anything like that. I'm sorry. Figure three talks about an input device 20C. You say it's physical. What physicalness am I supposed to understand from this blank box here that's marked as 20C? That's part of the disclosure. The other part of the disclosure is the specification. If we look at, and I cited it here, 13.1 through 19 describes the remote control. Because it's not drawn on the figure, it's not relevant to this court's analysis. But you said this is remote control that nobody ever developed before. And it's shown as a blank box 20C on figure three. And it also is described in figure three. How is it described? Does it tell me the components of it, and how it operates, and any other things that a POSA would allow a POSA? I mean, I realize, I know I sound like I'm talking about enablement. I know. I understand the problem. The problem is there's a disconnect between your specification and your claims. And if you believe that's the case, and the claims pass 101, they might not be enabled. But we don't go look at the claims, the spec, and have that define the claims. I want to ask you my question again, though, which is, I think for me this is a really important question, which is when I look at things like figure three, which shows this blank box on the input device, and then you're telling me the language, my claim, what's really eligible about it, or what it's directed to is some of this functional language in the where-in clause. And my concern is that it sounds a little bit like an idea. My invention is the idea of having a display on my remote control that can have two-way communication with a device that could be wearable. So my question again is, why isn't that, set aside that it's physical components, why isn't that itself an abstract idea? Well, what you just described, at least to me, is a physical device. If you're saying we're going to send this information to a media playing device. Okay, but another physical device would be, I want to play bingo on a computer. I have a physical device, it's a computer, and now I can play bingo on it. I haven't described to you how the computer is going to be modified or changed in order to play bingo or anything, but that's my idea. Here I have the idea, it involves multiple different physical components, but it's an idea of how they're going to interact with one another and that the remote will display and that the content provider will be wearable. That's a physical device. Now the difference between bingo is you took the computer, nothing's improved there, all you did was put bingo on the computer. No one's alleging that this was a conventional environment. It's not a conventional thing used as a tool. It's just not. And they're not going to get up and say it is. So you're really focusing on step two, even if we say, all right, this is all about displaying media content? Yeah, I was just going to switch. At step two, at a minimum, there is absolutely no evidence that this component, the component being the remote control, is conventional. In fact, the only evidence relied on by the district court for the conventionality of a remote with a display, full stop, was an internet website that the court found itself outside the record. And your point would be that that would be inappropriate, particularly under 12.6? In the context of a motion to dismiss, yeah, it would be inappropriate to consider it, and it certainly doesn't establish it as a matter of law. The court said that your statements in your complaint were conclusory. Isn't that right? Not all, some of the statements, but not the statements with respect to the, not in paragraph 18 when we went through the, there's factual allegations with respect to why we said this remote, not conventional for doing these things. And then we cited evidence below it. For example, wristwatches that did this were not around. Well, it's hard to prove a negative like you said. You said here's something that was around in 2006. But what about the, you do have a sentence that says the claimed technology, and then you describe, yeah, I guess the display, the remote control, and the wearable content player, and you say was not known in the prior, at the time of the invention, let alone well-known, routine, or conventional. Are you, you rely on that, I think, in your briefs? Yeah, we rely on that in our brief. That should, that's a plausible allegation. That's plausible. I mean, in 2002, it's not only plausible, there's no contrary evidence. And for the district court to conduct its own search as we went through in our brief was improper to go outside the record without giving us notice. Thank you, counsel. Your time has expired, but we'll give you two minutes back for rebuttal. And we'll hear from Mr. Fugger. Is it Fugger or Fugger? Fugger. Good morning, and may it please the court. The patents here are as straightforward as they appear. They reset the idea of providing information to a user in conjunction with media content. Could you address that point that I was just talking about, that paragraph 18 in the complaint? There's one sentence. It's the sentence that bridges pages A83 to 84 of the appendix. Could you just address why it is that that's conclusory, or what else I should think about that one sentence? And you said 83 to 84? Yeah. I believe the district court found that these were conclusory and irrelevant. Why is it conclusory and why is it irrelevant? Because it was in the context of deciding whether or not there was a technological solution to a technological problem. The court, correctly in our opinion, looked at the patent, the patent specification, the patent claims in light of the patent specification, and as you pointed out earlier, looked at what is this patent really geared toward? What is it directed to? Even if we accept the proposition that it is geared toward displaying information, gathering and displaying information, look at column four, line 36. A remote control device associated with a media playing device can also include a display device for displaying requested any of the information described here. In other words, there is an exact statement that the remote control can include a display. Now, is there any evidence in the record that that was common and routine at the time? I believe that the discussion was not that it was common and routine, but that it was not part of the invention. The display can be anywhere. The specification talks about that. So under step two, we can't ignore claim limitations. Okay, so step one, you look at what the claims are directed to. Now, just assume that the district court got it right about what the claim was directed to. Under step two, our job is to look at all of the limitations in the claim, either individually or as an ordered combination, and determine whether there is an inventive concept. And that's what these questions are going to. These questions are going to whether there is sufficient evidence in this complaint at paragraph 18, I mean, paragraph 18 on page 83, whether that's sufficient to raise a genuine issue, to raise a factual issue that would preclude 12b-6. Sure, and the answer is no, because these are, as mentioned, conclusory allegations that don't even cite the patent. Why do they have to cite the patent? I mean, this says, the claim technology, and it really emphasizes the wearable content player having display and playing, which is wirelessly coupled with a remote control having a second display that can wirelessly control operation of wearable content player. Why, and then it says, was not known in the prior article. Why is that conclusory, and why do they have to cite the patent to say it's not known? Well, to take that backwards, to cite the patent saying this was something, whether or not we're talking about wearable, which I believe is mentioned once in the patent. Well, he's focusing on the remote control. I don't understand your statement that's incidental. It says that it's an alternative display device. It's an alternative display device, right. It's not the focus of the patent. It's not the, if we're at step two, the inventive concept. It's not something more that takes an abstract idea and provides some sort of technological solution. There's no discussion about a technological solution with remote control. Well, we do have CASA that says if there is a non-frivolous allegation in the complaint, it doesn't have to cite to the specification, or to the written description, I'm sorry, in order to survive 12B6. Okay, it may not need to cite, the allegation may not need to cite to the specification, but the specification itself undercuts their arguments. Why? Because the remote control is merely one of a myriad of ways to show information. And when you look at Claim 32, which we want to look at, the information is going to a user, right, but the remote control has a display. But according to Claim 32, that information doesn't even need to come through the display. The information can come through a speaker on the remote. There's no discussion of that, and the specification considers... I don't understand that. There are several places in the written description that your friend on the other side cited, or that I just cited to you, that talk about a display on the remote control. Are you saying somehow they said, we don't really mean a display, we're just kidding? No, I'm saying that while there's a display on the remote, one, that display is not treated as an inventive concept, but two, because the display by the specification in other claims could be anywhere. But two, is that in that claim, while there is a display on the remote control, the information that's going to a user isn't necessarily through that display. There's just information going to a user, and there's a display on the remote. I don't understand that. The section I just read to you said that that's the way it's displayed to the user. In Claim 32? I would like to, I guess, turn to Claim 32, because it's a confusing ending, wherein, because the remote does have a display, a wirelessly remote control comprising a second display. The remote control device being configured to receive commands directing operations, and wherein the remote control device is configured to provide to the user at least a portion of the information. It doesn't say, provide to the user a portion of the information through that display. And in the specification, it talks about, we can provide a user with information anyway, through a display, through a loudspeaker, through earphones. There was no claim construction of this term, limiting it, or not limiting it, to an actual display. Well, I don't really think there's a need to limit it or not limit it. It fails 101 either way. I always have to think about these cases and say, if you were charged with infringement, I would guess that you would probably say to the court, you look at the written description, and it's clear that the only way that claim is satisfied is through an actual display. I don't know what our claim construction argument would be, but I can tell you that in the specification, there are multiple ways to provide information. I think arguing that it... Show me where it says there are multiple ways to provide information via the remote. Appendix page 43. Column 15. I guess starting around line 17, that's the start of a new paragraph. The information can be displayed on the display device 20D, which can be a dedicated display device for displaying the information, and which can be integrated into the radio panel, remote control. The information can also be audibly announced through the radio speakers and or earphones. That's a different embodiment. That's where they're talking about the car embodiment. I guess that's the point that if the invention of this patent were a remote control, the invention would be a remote control. The invention here is the abstract idea. Whether or not there was... Do you have another response on this? You seem to want to have us ignore this limitation because the abstract idea that the district court identified is up above earlier in the claim. We can't ignore this limitation under step two. Do you have another argument? For example, there are cases that say an abstract idea itself cannot be the inventive concept. I think the Supreme Court said something like that. The ineligible subject matter itself can't be the thing that gives the inventive concept, even if it's an awesome, amazing idea. I was going to reference Chargepoint, which is for that same argument. It's because we don't want to ignore that last limitation because that last limitation is the abstract idea. That abstract idea cannot be what is inventive. The inventive thing here is... Why is this abstract? You're assuming it's abstract. I want to hear you explain why you think it is. Because the remote is configured how it doesn't matter, but is configured to provide to the user at least a portion of the information associated with the content. If I'm watching television, my remote is configured to provide me information about what I'm watching. It doesn't matter how it's configured, it's just that it's configured to do that. That's the abstract idea. The abstract idea is providing information in conjunction... It doesn't matter how it's provided. If they came up with some fancy robot that was displaying the information, it would still be ineligible. Just because you're displaying information. If the focus of the claim were providing information, like the title of the patent is here, which is the summary of the invention is here, which is to provide information, and through a remote control is one of the many ways that we can provide information, and a robot is one of those ways, maybe it would be. There really are two steps, and you seem to be conflating them. The inventive concept, if we're looking to an inventive concept, can't be an abstract idea, which we discussed, but I think what we're arguing about here is whether or not there was a remote with a display on it before 2002 or whatever date it was. That's a novelty issue, and as this court has consistently held, a novel abstract idea is still an abstract idea, even if we take this remote with another display on it as novel, which we obviously don't concede, but even if we do... That language that you're quoting from our cases means an abstract idea. Let's say no one had ever thought of gathering data and displaying it, period, and then we'd say it's still just a novel abstract idea, but that's very different than saying that everything else is routine, conventional, just using normal computer hardware. Whether or not it's enabled is a different question. Right, and it is. Those are two different questions, 112 and 101, but I think that there is that how question, and if we're talking about this remote being a technological solution at step two, that's the inventive concept, it cannot be a technological solution when there's no guidance as to what that solution is. You're collapsing enablement and step two. I'm not. That's from CX Loyalty, I believe, which was there can be no technological solution if there's no guidance, and as it's been mentioned, figure three, it's a black box, and it's an input device. It's not even called a remote control, because it doesn't matter. It's just a way to provide information, which is the abstract idea, and the abstract idea cannot save a patent at step two. Anything further, counsel? No, that's all. Thank you. Two minutes. On step two, the remote control does not perform the abstract idea identified by the district court. The district court said, because the district court referred to the broadcasting system, that the patent and all the claims, regardless of what they said, are directed to providing information, providing content along with information about content. The content player in the first limitation has a receiver for receiving that information. Every other limitation is directed to the content player, particularly on step two. First, that's why we don't believe it's directed to an abstract idea. It's the claims that as a whole are directed to the device for receiving the information, not for providing. But on step two, we look at conventionality. The claims take that content, they have a display on the content player that could display it, and then they have a remote. A portion of that information, and particularly the information about the content, is sent to the remote. The remote has a display for displaying that information. That is not conventional. What's your response to your friend on the other side, the citation to ex-loyalty? What did he say about ex-loyalty? I'm sorry. He said, he quoted, or effectively quoted, a paraphrase, the quote that says, that the claims provide no useful guidance as to how this purported function is achieved, and thus cannot be directed to a technological solution. At step two, we ask, is it being done in a conventional environment? The answer is no. It's an improvement to the technology. Is it an improvement to the technology as a whole? It is. It improves upon the technology as a whole. It's not a social science improvement done on a computer. It's not a business method. Your view is that it improves upon the technology because the remote control can display information about the content that the user is watching on the content player. It was previously unable to do that. We think that's consistent with this court's precedent. More importantly, with respect to step two, if you give us all reasonable inferences, and you read paragraph 18 of the complaint, and you look at the remote being an object of the invention, and there's no dispute it's described in the specification, the literal only reason to get out of that component is because of enablement. And that is not proper. And I don't think this court's precedence allows us to go into this quasi-enablement. Thank you, counsel. We'll take the case under submission. The honorable court is adjourned until tomorrow morning at 10 a.m.